IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

DANNY GOUGE, )
 )
    Plaintiff, )
 )  File Number 1:22-cv-40
v. )  COMPLAINT
 )  (JURY DEMANDED)
JEAR LOGISTICS, LLC; )
ANYWAY LOGISTICS, INC.; and )
AGUSTIN A. LOZA, JR., )
 )
    Defendants.

## COMPLAINT

Comes now Plaintiff Danny Gouge, by and through counsel, and files this Complaint and shows unto the Court as follows:

### PARTIES

1. Danny Gouge is an adult and is a resident of the State of Tennessee.

2. Jear Logistics, LLC (hereinafter "Jear Logistics"), upon information and belief, is a for-profit limited liability company organized and incorporated under South Carolina law.

3. Jear Logistics, LLC is registered with the South Carolina Secretary of State with a principal address of 3409 Salterbeck St., Mt. Pleasant, SC 29466; it is not registered with the North Carolina Secretary of State.

4. Jear Logistics, LLC, based on reasonable information and belief, can be served through its registered agent Ann Self Sigmon, 1606 E. Church Street, Cherryville NC, 28021.

5. Anyway Logistics, Inc. (hereinafter "Anyway Logistics"), upon information and belief, is a for-profit, business corporation organized and existing under the laws of the State of California, with an office and principal place of business located at 3021 South Golden State Frontage Road, Fresno, California 93725 and another office located at 3716 West Ridge Road, Gary, Indiana 46408; it is not registered with the North Carolina Secretary of State; and its USDOT Number is 1883174.

6. Agustin A. Loza, Jr., upon information and belief, is a citizen and resident of the State of Arizona and can be served at 4431 W. Earll Drive, Phoenix, Arizona 85031-3821.

7. Venue is proper pursuant to 28 U.S.C. § 1391 because the crash giving rise to this action occurred in Buncombe County, North Carolina, near the City of Asheville, both of which are within the Western District of North Carolina.

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 and the parties are citizens of different states.

## FACTUAL BACKGROUND

9. Defendant Jear Logistics is a registered interstate motor carrier broker with U.S. DOT Number 2240889 that provides its customers access to motor carriers for the shipment of goods.

10. Jear Logistics at all times had a duty to select safe motor carriers to ship goods.

11. To determine if a motor carrier was safe, Jear Logistics had a duty to qualify the motor carrier before entrusting it with a load of goods.

12. On or about March 15, 2019, Jear Logistics contracted with Arcadia Farms, LLC (hereinafter "Arcadia Farms") to deliver certain goods to the Walmart Distribution Center in Pauls Valley, Oklahoma. (See Exhibit 1, Bill of Lading.)

13. Jear Logistics was listed as the motor carrier on the Bill of Lading.

14. Jear Logistics received payment from Arcadia Farms.

15. Jear Logistics contracted with and hired Anyway Logistics to deliver the goods being shipped by Arcadia Farms to the Walmart Distribution Center in Pauls Valley on the March 15, 2019 Bill of Lading.

16. Jear Logistics and Anyway Logistics entered into a joint enterprise to deliver the goods being shipped by Arcadia Farms on the March 15, 2019 Bill of Lading.

17. At all relevant times, Anyway Logistics was an unsafe carrier as evidenced by the revocation of its authority by the Federal Motor Carrier Safety Administration. Anyway Logistics' motor carrier authority was involuntary revoked twice before the date of this crash, which evidenced a systemic problem with safety. (See DOT Authority History, Exhibit 2).

18. On March 15, 2019, while in the process of shipping property in interstate commerce from Arden, North Carolina, Anyway Logistics' employee Agustin A. Loza, Jr., a commercial driver, negligently drove the tractor-trailer vehicle which he was operating into a tractor-trailer vehicle owned by Gouge Trucking Company, Inc., injuring Plaintiff Danny Gouge.

19. No act of Plaintiff Danny Gouge contributed to the crash.

20. No failure to act by Plaintiff Danny Gouge contributed to the crash.

## GENERAL STATEMENT OF FACTS

21. Driving tractor-trailers on the roads of America is dangerous, potentially causing injury and death, unless skillfully and carefully done.

22. Single tractor trailers, when fully loaded, weigh as much as 80,000 pounds.

23. As a result of the potential dangers of tractor-trailers to the motoring public, the federal government requires all interstate trucking companies to be licensed.

24. As a result of the potential dangers to the motoring public of hiring unsafe motor carriers, the federal government requires all interstate brokers to be licensed.

25. Once licensed, an interstate broker is issued public authority to place loads with motor carriers in interstate transportation.

26. Once licensed, a trucking company is issued public authority to operate tractor-trailers in interstate transportation.

27. The U.S. Department of Transportation (hereinafter the "DOT"), through the Federal Motor Carrier Safety Administration (hereinafter the "FMCSA"), issues the public authority to operate a trucking company to an interstate broker.

28. Companies authorized by the FMCSA to use tractor-trailers on the road in interstate transportation, or to broker loads to interstate motor carriers, receive a DOT number.

29. The FMCSA both supervises and inspects trucking companies it licenses and provides safety ratings for the companies, which it publishes without charge on the internet.

30. Licensed trucking companies are either non-rated by the FMCSA or are provided one of three safety ratings: satisfactory, conditional, or unsatisfactory.

31. Safer trucking companies are provided "satisfactory" safety ratings.

32. Companies with known systemic problems and risks are given "conditional" safety ratings, and the FMCSA provides those conditional companies advice and materials to improve operations, eliminate known problems, and obtain a satisfactory rating.

33. A conditional safety rating indicates that the trucking company "does not have adequate safety management controls in place to ensure compliance with the safety fitness standards that could result in occurrences of violations listed in 49 C.F.R. § 385.5(a-k)." (FMCSR 385.3).

Subsections a. through k. of 49 C.F.R. § 385.5 read as follows:

    a. Commercial driver's license standard violations,

    b. Inadequate levels of financial responsibility,

    c. The use of unqualified drivers,

    d. Improper use and driving of motor vehicles,

    e. Unsafe vehicles operation on the highways,

    f. Failure to maintain accident registers and copies of accident reports,

    g. The use of fatigued drivers,

    h. Inadequate inspection, repair and maintenance of vehicles,

    i. Transportation of hazardous materials, driving and parking rule violations,

    j. Violation of hazardous materials regulations, and

k.  Motor vehicle accidents and hazardous materials incidents.

34. Interstate brokers have a duty to qualify and hire safe trucking companies.

35. In order to fulfill its duty to qualify and hire safe trucking companies, an interstate broker has a duty to investigate a trucking company's safety record.

36. It is the normal custom and practice for businesses such as Jear Logistics, when hiring trucking companies, to perform a safety analysis of the trucking company, including a review of the free FMCSA website and its published safety rating before hiring the trucking company.

37. Jear Logistics hired Anyway Logistics to transport the load which is more particularly described in Exhibit 1.

38. Jear Logistics retained control of the shipment to include requiring check calls, delivery dates and times, and other requirements as shown in the contract between the parties and the shipping documents, a custom and practice of the industry.

39. Anyway Logistics' motor carrier authority was involuntary revoked twice before the date of this crash, which evidenced a systemic problem with safety. (See DOT Authority History, Exhibit 2).

40. For the March 15, 2019 load, Anyway Logistics assigned its driver, Agustin A. Loza, Jr., to drive an Anyway Logistics' commercial motor vehicle.

41. Agustin A. Loza, Jr. was, at all times relevant to this claim, the agent, servant and employee of Defendant Anyway Logistics, Inc.

42. Defendant Loza was, at all material times hereto, operating a commercial motor vehicle arising out of and in the course of his employment with Anyway Logistics

and transporting a load for Jear Logistics, which load is more particularly described in Exhibit 1.

43. The transportation of the load by Anyway Logistics and Loza was in the course and scope of Jear Logistics' business and Anyway Logistics' business.

44. Anyway Logistics and Loza were transporting the load in furtherance of Jear Logistics' business and Anyway Logistics' business.

45. The transportation of the load for Jear Logistics was in the required time and space requirements imposed on Anyway Logistics by Jear Logistics.

46. When Jear Logistics signed as the carrier on the Bill of Lading (Exhibit 1) and then chose Anyway Logistics to transport its load in interstate commerce, Jear Logistics became the effective or statutory employer of both Anyway Logistics and Loza.

47. When Jear Logistics signed as the carrier on the Bill of Lading and then chose Anyway Logistics to transport its load in interstate commerce, Jear Logistics became the principle of its agents Anyway Logistics and Loza.

48. Anyway Logistics and Loza at all times were in the course and scope of their employment with Jear Logistics.

49. Jear Logistics and Anyway Logistics had a common goal: to move goods for profit.

50. Jear Logistics and Anyway Logistics managed the transport of the load and equipment for mutual profit.

51. Jear Logistics and Anyway Logistics profited from the mutual relationship with one another.

52. Anyway Logistics, at the time of the crash, was a commercial motor carrier supervised by the FMCSA.

53. Anyway Logistics' motor carrier status was involuntarily revoked on August 13, 2014.

54. Anyway Logistics' motor carrier status was reinstated on February 24, 2015.

55. Anyway Logistics' motor carrier status was again revoked on August 12, 2015.

56. These revocations were available on the free public website for inspection by Jear Logistics.

57. Jear Logistics was responsible for the standards it used to qualify and hire trucking companies to haul goods for its customers.

58. Jear Logistics failed to ensure it had the proper rules, regulations, policies and procedures in place to qualify and hire safe trucking companies.

59. Despite its obligation and duty to hire safe trucking companies, and despite Anyway Logistics' dangerous safety record which safety record created a foreseeable risk of harm to the public to specifically include major wrecks causing injury and death, Jear Logistics hired Anyway Logistics to haul goods.

60. At all times relevant to this claim, Jear Logistics had the capacity to determine the safety, fitness, and suitability of Anyway Logistics to haul goods across state lines and on North Carolina's roads, both public and private; highways; and interstates.

61. Jear Logistics specifically chose to hire Anyway Logistics to haul its goods when Jear Logistics knew, had reason to know, or should have known that Anyway Logistics was an unsafe motor carrier.

62. Anyway Logistics was, and remained at all times relevant to this claim, an incompetent and unsafe trucking company and motor carrier, which Jear Logistics knew, had reason to know, or should have known.

63. Anyway Logistics' actions and inactions, as described herein, were negligent and combined with the acts of Agustin Loza, Jr. and Jear Logistics, to be a direct and proximate cause of the damages to Danny Gouge.

## COUNT ONE:
## NEGLIGENT HIRING, RETENTION, ENTRUSTMENT, AGENCY, JOINT ENTERPRISE, AND VENTURE

64. Plaintiff incorporates the prior paragraphs above as if fully set forth herein.

65. At all relevant times, every relevant standard of care, including industry standard of care, required that Jear Logistics qualify motor carriers as safe before hiring them, in order to protect the public in general and the motoring public in particular.

66. At all relevant times, every relevant standard of care, including the industry standard of care, required that Jear Logistics only hire and retain safe motor carriers in order to protect the public.

67. At all relevant times, Jear Logistics had a duty to qualify, hire and train safe motor carriers in order to protect the public.

68. Jear Logistics had a duty to ensure proper safety rules, regulations, policies, and procedures were in place for the hiring, supervising, and retaining of safe, qualified trucking companies in order to protect the public.

69. At all relevant times, Jear Logistics knew, had reason to know, or should have known that Anyway Logistics had lost its motor carrier status twice by involuntary revocation prior to March 15, 2019.

70. Jear Logistics failed to use ordinary and reasonable care in conducting the investigation and background checks of their employee, agent, servant, and contractor Anyway Logistics.

71. Jear Logistics was capable of selecting a safer motor carrier and instead chose Anyway Logistics.

72. Jear Logistics participated in, authorized, and ratified the negligent qualification, hiring and retention of Anyway Logistics and negligently entrusted its load to Anyway Logistics.

73. Jear Logistics failed to use reasonable care in considering, investigating and selecting Anyway Logistics to carry loads in interstate commerce.

74. Jear Logistics failed to use reasonable care in hiring and contracting with Anyway Logistics.

75. Jear Logistics failed to use reasonable care in entrusting the load that is described in Exhibit 1 to Anyway Logistics.

76. Jear Logistics failed to use reasonable care and was negligent in its failure to exercise reasonable care in investigating and determining the fitness of its employees, agents, servants and contractors, and in particular of Anyway Logistics and Loza, for the task of moving tractor-trailer loads in interstate commerce.

77. Jear Logistics failed to use reasonable care in not qualifying and vetting Anyway Logistics, failing to train its employees and agents in this inherently dangerous

work, and in failing to develop or enforce appropriate guidelines consistent with prevailing safety standards and applicable law.

78. Jear Logistics failed to exercise reasonable care in hiring Anyway Logistics and in investigating its safety management systems and its compliance with the applicable trucking safety regulations, as well as the safety performance of Anyway Logistics.

79. The actions and inaction of Jear Logistics were not reasonable given the known risks and harms of hiring an unsafe motor carrier.

80. Jear Logistics' actions were negligent pursuant to one or more of the following from the Restatement (Second) of Torts:

   a. §410 Conduct in Obedience to Employers Directions,
   b. §411 Negligence in Selection of Contractor,
   c. §413 Duty to Take Precautions,
   d. §414 Negligence in Exercising Control Retained by Employer,
   e. §416 Negligence of a Carefully Selected Independent Contractor,
   f. §417 Work Done in a Public Place, and
   g. §428 Public Franchise.

81. At all times, Anyway Logistics was the employee, agent, apparent agent, agent by estoppel, or agent by ratification of Jear Logistics.

82. Anyway Logistics was an agent of Jear Logistics as set forth in Restatement (Second) of Agency § 213.

83. Jear Logistics' negligence, as described herein, was a proximate cause of the subject collision.

84. As a further direct and proximate result of the negligence of Jear Logistics, Plaintiff Danny Gouge sustained numerous injuries which have caused him

considerable pain, suffering, loss of enjoyment of life, disability and anxiety. Upon further information and belief, said injuries are permanent.

85. As a further direct and proximate result of the negligence of Jear Logistics, Plaintiff was forced to incur expenses for medical care, treatment and services. Plaintiff has been informed and believes, and therefore alleges, that additional medical expenses will be incurred by him in the future. Plaintiff prays for leave to show what the reasonable value and total amount of said expenses are at the time of trial.

86. As a direct and proximate result of the negligence of Jear Logistics, Plaintiff Danny Gouge has suffered a loss of past and future income.

## COUNT TWO: NEGLIGENCE OF ANYWAY LOGISTICS: NEGLIGENT HIRING, TRAINING, ENTRUSTMENT, SUPERVISION, RETENTION, AND MAINTENANCE

87. All preceding statements and allegations of the complaint are incorporated and realleged as if expressly set forth herein.

88. Regardless of the employment relationship, Defendant Anyway Logistics is the registered owner of the motor vehicle bearing U.S. DOT Number 1883174, displayed on the tractor involved in this crash, and is responsible for the acts of the driver of that vehicle.

89. The North Carolina Department of Transportation, Division of Motor Vehicles, has the authority in the State of North Carolina to regulate motor carrier safety and has adopted the Federal Motor Carrier Safety Regulations (hereinafter the "FMCSR"), with some exceptions, in the North Carolina Administrative Code, Title 19A, Rule 3D.0801.

90. At all times relevant to this claim for relief, Defendants Anyway Logistics and Defendant Loza, Jr. were subject to and required to obey the minimum safety standards established by the FMCSR found at 49 CFR §§ 301-399, either directly or as adopted by the North Carolina Department of Transportation, Division of Motor Vehicles, and the International Registration Plan for North Carolina-based vehicles operating interstate.

91. The Defendants will be shown at trial to have violated the Federal Motor Carrier Safety Regulations which constitutes negligence per se, including but not limited to:

    a. §383    Commercial Driver's License Standards,

    b. §390    General,

    c. §391    Qualifications of Drivers,

    d. §392    Driving of Commercial Motor Vehicles,

    e. §393    Parts and Accessories Necessary for Safe Operation,

    f. §395    Hours of Service,

    g. §396    Inspections, Repairs, and Maintenances.

92. Defendant Anyway Logistics was required to teach and train Defendant Agustin Loza, Jr. so that he was able to understand and obey the rules and regulations contained in the FMCSR.

93. Defendant Anyway Logistics was negligent, and grossly negligent, in:

    a.    hiring and/or contracting with Defendant Loza, Jr. to drive the tractor-trailer at issue;

    b.    training of Defendant Loza, Jr. on the FMCSR and Commercial Driver's Manual;

      c.      failing to supervise Defendant Loza, Jr. while he was operating and driving the tractor-trailer;

      d.      failing to train Defendant Loza, Jr. to properly drive the tractor-trailer;

      e.      failing to train Defendant Loza, Jr. to properly inspect the tractor-trailer;

      f.      failing to train Defendant Loza, Jr. to properly maintain the tractor-trailer;

      g.      entrusting Defendant Loza, Jr. with the tractor-trailer;

      h.      retaining Defendant Loza, Jr. to drive the tractor-trailer;

      i.      failing to conduct proper and required checks on the background of their employee, agent and/or contractor, Defendant Loza, Jr.; and

      j.      failure to exercise ordinary care to determine their employees' agents' and/or contractors' fitness for the task of driving a commercial vehicle interstate.

94. Defendant Anyway Logistics had a duty to promulgate and enforce rules and regulations to ensure its drivers and vehicles were reasonably safe and it negligently failed to do so.

95. Defendant Anyway Logistics, through its agents and employees, knew, had reason to know, or should have known, by exercising reasonable care, about the risks set forth in this Complaint and that by simply exercising reasonable care these risks would be reduced or eliminated. These risks include, but are not limited to:

      a.      the risks associated with unsafe drivers;

      b.      the risks associated with failing to train drivers to obey the FMCSR;

      c.      the risks associated with failing to train drivers to follow minimum driving standards for commercial drivers;

d.  the risks associated with failing to train drivers to follow minimum inspection standards for commercial drivers;

e.  the risks associated with failing to train drivers to follow minimum maintenance standards for commercial drivers;

f.  the risks associated with failing to have adequate risk management policies and procedures in place;

g.  the risks associated with failing to ensure its routes could be driven within hours-of-service;

h.  the risks associated with requiring drivers to meet unrealistic driving goals which Anyway Logistics knew, had reason to know, or should have known would cause its drivers to violate the hours-of-service regulations;

i.  the risks associated with failing to have policies and procedures in place to identify undertrained and unqualified drivers;

j.  the risks associated with failure to appropriately implement and enforce risk management policies and procedures to monitor and assess Defendant Agustin Loza, Jr. once he was hired;

k.  the risks associated with failing to implement and follow a written safety plan;

l.  the risks associated with failing to protect the members of the public, such as the Plaintiff, from the risks described above;

m.  the risks associated with failing to use the composite knowledge reasonably available to Anyway Logistics to analyze the data available to it to identify the risk, take steps to reduce or eliminate the risk, and to protect members of the public from that risk; and,

n.  the risks associated with failing to appropriately implement and enforce risk management policies and procedures to identify the risks described above.

96. The negligence of Defendant Anyway Logistics was a proximate cause of the injuries and damages sustained by Plaintiff Danny Gouge.

97. As a result of Defendant Anyway Logistics' actions and inactions, Danny Gouge suffered serious injuries affecting his activities of normal daily living.

98. The negligence, and gross negligence, of Anyway Logistics individually, or combined and concurring with the negligence of the other defendants, was a legal and proximate cause of the injuries and damages to Danny Gouge for which Danny Gouge is entitled to receive restitution or compensation for past, present and future economic and non-economic damages to the extent allowed by law.

## COUNT THREE:
## NEGLIGENCE OF AGUSTIN LOZA, JR.

99. All preceding statements and allegations of Plaintiff's complaint are incorporated herein and realleged as if expressly set forth herein.

100. At the time of the crash, Defendant Agustin Loza, Jr. failed to exercise due care and circumspection by driving the tractor-trailer carelessly and erratically, by failing to keep the tractor-trailer under control, and by running into Danny Gouge's vehicle.

101. At all times relevant hereto, Danny Gouge exercised reasonable and ordinary care in operating his vehicle.

102. The tractor-trailer driven by Defendant Agustin Loza, Jr. was driven with the permission and at the direction of Defendant Anyway Logistics.

103. Upon information and belief, the tractor-trailer driven by Defendant Agustin Loza, Jr. was driven in the course and scope of his employment with the business of Defendant Anyway Logistics.

104. Regardless of the employment relationship, Anyway Logistics is the registered owner of U.S. DOT Number 1883174 displayed on the tractor involved in this crash and is therefore responsible for the acts of the driver of that vehicle.

105. At the time and place of this wreck, Defendant Agustin Loza, Jr. was generally negligent under the circumstances then and there existing in that he:

a. failed to keep his vehicle under proper control;

b. failed to keep a reasonable and proper lookout;

c. failed to timely apply his vehicle's brakes, alter its direction of travel, or take any other appropriate action when he, by the exercise of due and reasonable care, should have seen the Plaintiff's vehicle;

d. failed to operate his vehicle in a safe and prudent manner in view of the conditions which existed at the time of the crash;

e. failed to inspect his vehicle in a manner considerate of the safety and lives of the other persons lawfully on the road;

f. failed to operate his vehicle in a manner considerate of the safety and lives of the other persons lawfully on the road;

g. drove in a reckless manner, and failed to decrease speed as may have been necessary to avoid colliding with the Plaintiff's vehicle and to avoid injury to the Plaintiff, in violation of North Carolina General Statutes § 20-141(m);

h. failed to stop his vehicle to avoid colliding with the Plaintiff's vehicle; and

i. was in other respects negligent, as may be revealed by the discovery process herein and/or at the trial of this matter.

106. Defendants' negligence directly and proximately caused the crash with Danny Gouge's vehicle and all resulting damages and injuries.

107. Defendant Agustin Loza, Jr. was subject to the Federal Motor Carrier Safety Regulations, 49 CFR §§ 301-399, and was required to obey these regulations at the time of the crash and at all relevant times prior to the crash.

108. The Defendant Agustin Loza, Jr. violated one or more of the Federal Motor Carrier Safety Regulations which constitutes negligence per se, including but not limited to:

a. §383    Commercial Driver's License Standards,

  b. §390  General,

  c. §391  Qualifications of Drivers,

  d. §392  Driving of Commercial Motor Vehicles,

  e. §393  Parts and Accessories Necessary for Safe Operation,

  f. §395  Hours of Service, and

  g. §396  Inspections, Repairs, and Maintenance.

109. Defendant Agustin Loza, Jr. violated the state and Federal Motor Carrier Safety Regulations, which constitutes negligence per se.

110. The negligence and gross negligence of Agustin Loza, Jr. individually, or combined and concurring with the negligence of the other Defendants, was a direct and proximate cause of the injuries and damages to Danny Gouge for which Danny Gouge is entitled to recover for past, present and future economic and non-economic damages to the extent allowed by law.

## COUNT FIVE:<br>DAMAGES

111. All preceding statements and allegations above are incorporated herein and realleged as if expressly set forth herein.

112. Danny Gouge, as a result of the Defendants' negligence and statutory violations, has suffered past losses and damages and will suffer future economic and non-economic losses.

113. As set forth more fully in the facts hereinabove, each of the Defendants was grossly negligent, which either alone, or combined and concurring with the acts and behavior of the other Defendants, directly and proximately caused the crash and Danny Gouge's injuries and damages.

114. Defendants' conduct constituted a conscious disregard for the life and safety of Danny Gouge and for the lives and safety of the motoring public generally, and these Defendants are therefore liable to Danny Gouge for exemplary or punitive damages.

WHEREFORE, Plaintiff Danny Gouge prays that the following relief be granted:

a. that he have and recover of and from the Defendants, jointly and severally, a sum in excess of $75,000 for his injuries and damages incurred and to be incurred, as a direct and proximate result of the acts and omissions of the Defendants, as hereinabove alleged;

b. that all issues of fact be tried by a jury;

c. for an award of punitive damages against Defendants Anyway Logistics and Agustin Loza, Jr., jointly and severally, in an amount the jury believes to be just, fair and equitable, given the facts and after hearing the issues in this case;

d. that the Plaintiff have and recover all of his costs in the prosecution of this claim, including prejudgment interest as of the date of the filing of this Complaint; and

e. for such other and further relief which this Court deems just and proper.

Respectfully submitted this the _____ day of February, 2022.

/s/ Derrick R. Bailey
Derrick R. Bailey
Attorney for Plaintiff
32 Orange Street
Asheville, NC 28801
Telephone: (828) 257-2777
Facsimile: (828) 257-2776
Email: derrickrbailey@bellsouth.net